## SPEARS v. LONG.

In action to enjoin the enforcement of an execution, to have the judgment marked satisfied, and to carry out a contract entered into between the parties whereby other securities were agreed upon as a payment of

said judgment, *held*, that even if there were no adequate remedy at law, which is essential to the jurisdiction of the Court of Equity in such cases, the agreement in this case is not shown to have been so certain and explicit as to entitle plaintiffs to a decree for the specific performance of the alleged agreement.

Before FRASER, J., Spartanburg, August, 1889.

Action by H. L. Spears and G. G. Pridmore against James Long and L. M. Gentry, sheriff, commenced February, 1888. The decree of the Circuit Judge was as follows:

This cause is before me on a report of a referee and exceptions. It seems to me that, in the strongest view which can be taken of this case in behalf of plaintiffs, there was an agreement between them and the defendant, Long, that he would accept a certain note or bond, secured by mortgages, in payment of a judgment he held against plaintiffs. It is not clearly stated in the complaint, and it seems to me that such an allegation is carefully avoided, that Long ever accepted such performance on the part of the plaintiffs as was tendered; and, if it can be held that there is such an allegation in the complaint, the testimony does not sustain it. Plaintiffs may have put themselves in such a position as, in a proper case, would entitle them to a decree for specific performance, but this is not a contract to which that special relief is applied by the Court of Equity.

If there has been no acceptance of what was tendered in payment, and this court cannot order the acceptance, then the only foundation on which in any event the plaintiffs can rest their case for injunction is wanting. I am not satisfied, however, that the plaintiffs have shown, as they ought to have done, by a preponderance of the evidence, the character of the security which was agreed on, whether only mortgage of personal property, or of real estate also; or whether the negotiations amongst these parties ever terminated in an actual definite agreement at all.

If the plaintiffs have shown any agreement at all, it was that Long would accept a note or bond secured by mortgage of certain personal property in payment of the judgment debt. If this be so, then, while it is a small matter, they could not require the defendant, Long, to accept any portion of the payment, even $9.00

or $9.40 in money, if tendered, or even mortgages so carelessly and inaccurately drawn as these seem to be, and which may not operate as security at all. I think, therefore, there is no foundation for the interference of this court by injunction or other equitable relief, and there has been a total absence of proof of any damages for the breach of contract, if any, so as to entitle plaintiffs to any relief on the law side of the court. In the view I take of the allegations in this complaint, and the testimony offered to sustain them, I think it unnecessary to consider the question whether this court, sitting in equity, and in a proceeding brought for that purpose, can enjoin proceedings under a judgment on the law side of the court, on the sole ground that the same has been paid and satisfied.

It is therefore ordered and adjudged, that the report of the referee be overruled and the complaint dismissed with costs.

*Mr. S. J. Simpson*, for appellant.

*Messrs. Carlisle & Hydrick*, contra.

April 17, 1890. The opinion of the court was delivered by

Mr. Justice McGowan. This was a proceeding on the equity side of the court to enjoin the enforcement of a judgment, and to have the execution marked "satisfied."

It seems that James Long recovered a judgment in Spartanburg against the plaintiffs for $1,093.61, besides interest and costs; that $245 of the judgment had been paid, and that the execution for the remainder was levied "on a lot of land in Gaffney City, with the wood-shop and all tools and machinery; one saw mill and steam engine; one yoke of oxen, one pair of mules, one cart and one wagon." After the levy was made, the plaintiffs begged indulgence, and went to Union, where the plaintiff, James Long, lived. Some negotiations as to an agreement of compromise took place as to other security for the amount still due on the judgment.

As to what were the terms of the agreement, the parties widely disagree. The plaintiffs allege in their complaint "that James Long agreed that he would take a part of said property so levied

on in full payment of his debt, to wit, the said mill, steam engine, oxen, and mules, if the plaintiffs would have one W. N. Turner to execute to him (Long) his note for $1,000, with a mortgage of said property to secure the said note, and directed plaintiffs, when said note and mortgage were executed and sent to him, to turn over said property to said Turner," &c. While the defendant, Long, answered, among other things, as follows: "Being wholly unacquainted with and ignorant of the character and circumstances of the said Turner, and relying entirely upon the statements made as to him by the plaintiffs," agreed with them and said Turner, that he would take in payment of his judgment the said Turner's note for a sum something over $1,-000 (the exact amount not recollected), provided, however, that the said Turner would secure the payment thereof by a mortgage of the said steam engine, saw mill and fixtures, and parts belonging thereto, one pair of mules, one pair of oxen, one log wagon, one road wagon, *and also of 130 acres of land.* It was further agreed by and between the parties to the said contract, that this defendant should not be bound thereby until the notes and mortgages were examined and approved by his attorney, and that not until then should the said property or any part thereof be delivered to the said Turner; but that shortly thereafter this defendant received through the mail four notes of $250 each, and two chattel mortgages, purporting to have been executed by said Turner, one conveying two mules and two oxen as security for the sum of $250, the other conveying the engine, saw mill and fixtures, and one log cart as security for the sum of $750; and therewith defendant received the information from the plaintiffs that they had delivered said property to Turner, that the said mortgages did not include all the property agreed to be mortgaged to secure the payment of said notes, and that immediately after receiving the same, this defendant tendered the same back to the said Turner, because not executed for the amount agreed upon, and not secured by mortgages of the property agreed upon," &c.

The proceeding was for permission to pay into court $9 short in the notes, that the original judgment against the plaintiffs should be perpetually enjoined, the execution marked "satisfied,"

and for $100 damages.    It was referred to J. K. Jennings, Esq., as special referee, who overruled a motion to dismiss the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action.    He reported that the testimony was conflicting, but he thought the preponderance was slightly in favor of plaintiffs, and found that the plaintiffs had made a legal tender of $9, the balance of Long's judgment over $1,000, and that the plaintiffs should be allowed to pay that into court, and have the judgment perpetually enjoined, with costs, &c.

The case came up on exceptions to this report, and Judge Fraser, among other things, held as follows: "It is not clearly stated in the complaint that Long ever accepted such performance on the part of the plaintiffs as was tendered; and if it can be held that there is such an allegation in the complaint, the testimony does not sustain it.    The plaintiffs may have put themselves in such a position as, in a proper case, would entitle them to a decree for specific performance; but this is not a contract to which that special relief is applied by the Court of Equity.    If there has been no acceptance of what was tendered in payment, and this court cannot order the acceptance, then the only foundation on which, in any event, the plaintiffs can rest their case for injunction is wanting.    I am not satisfied, however, that the plaintiffs have shown, as they ought to have done by a preponderance of the evidence, the character of the security which was agreed on—whether only mortgage of personal property or of real estate also; or whether the negotiations among those parties ever terminated in an actual definite agreement at all," &c.; and he dismissed the complaint.

From this decree the plaintiffs appeal upon the following grounds of alleged error: "1. In holding that there was no allegation in the complant and no proof that the defendant, Long, ever accepted the performance on the part of the plaintiffs of the agreement he had made with them to take the property named in said complaint and said agreement, in full satisfaction and payment of the judgment he then held against them.    2. In not holding that plaintiffs complied fully with their agreement with the defendant, Long, when they turned over to Turner at his instance the property he had agreed to accept in payment of said

judgment, and that they were then entitled to have him mark the judgment 'satisfied.'   3. In not holding that, whether the said agreement had previously been executed or not, the defendant, Long, did, on December 24, 1887, agree to accept the property already turned over to Turner, as part performance of the agreement, and to accept the balance due in money, and his subsequent refusal to accept said payment when it was tendered to him, was a breach of contract on his part, and that plaintiffs were entitled in this action to a decree of this court, requiring him to accept said sum, and so to perform his agreement.   4. In holding that, while plaintiffs may have put themselves in a position to be entitled to specific performance, still they could not get such relief in a case like this in a Court of Equity.   5. In not holding, as the referee did, that the plaintiffs showed by a preponderance of the proof that they were entitled to have said judgment of the defendant, Long, marked paid and satisfied, and in sustaining said defendant's exception with reference thereto.   6. In holding that the mortgages were so inaccurately drawn that the defendant, Long, could not be required to accept them, nor to accept the $9 in money; and in not holding that said defendant did accept said mortgage, and, with said mortgages in his possession, did agree to accept the said sum of $9 in full of said agreement," &c.

Considering this as a proceeding on the equity side of the court, to require James Long to perform specifically his alleged contract to enter "satisfaction" on his judgment against the plaintiffs, several things were necessary before there could be a proper case for the exercise of that peculiar jurisdiction.   In the first place, it is only a certain class of contracts, where there is not plain and adequate remedy at law, which equity will require to be specifically performed.   Without stopping to inquire whether the contract in contention here was or was not of a class capable of being enforced, it was still necessary that it should have certain elements and incidents, in order to authorize a Court of Equity to compel its performance.   The court cannot make a contract for the parties, or even complete an imperfect one, and therefore it is indispensable that there should be a concluded contract "certain and explicit."   As Mr. Pomeroy puts it: "The

contract must be concluded, certain, unambiguous, natural, and upon a valuable consideration; it must be perfectly fair in all its parts, free from any misrepresentation, or misapprehension, fraud, or mistake, imposition or surprise," &c. 3 *Pom. Eq. Jur.*, § 1415, and notes.

Now, taking this as the standard, was there such a contract shown in this case? The alleged contract here was verbal, and the testimony is admitted to be very conflicting. The plaintiffs lived in Spartanburg and Long in Union. After the first preliminary negotiation, the papers, without being examined or approved by Long, were sent to him by mail, and he objected to them. We have read the testimony carefully, and we must say that we agree with the Circuit Judge that Long never did yield his claim that 130 acres of land was to be included in the mortgage, or unqualifiedly accept the papers offered. As we understand it, the minds of the parties never met on the subject, and the contract was never finally "concluded." Under these circumstances we cannot say that the Circuit Judge committed error in refusing to decree specific performance of a contract not certainly consummated or its terms clearly shown. See *Davis* v. *McDuffie*, 18 S. C., 500.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, without prejudice to any legal remedy of the parties as they may be advised.